```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
SOTERO NELI FLORES and CORNELIO     :
GUERRERO, individually and on       :
behalf of others similarly          :
situated                            :
                                    :
                    Plaintiffs,     :   16 Civ. 2916 (HBP)
                                    :
     -against-                      :   OPINION
                                        AND ORDER
HILL COUNTRY CHICKEN NY, LLC        :
d/b/a HILL COUNTRY CHICKEN and      :
MARC GLOSSERMAN,                    :
                                    :
                    Defendants.     :
                                    :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/25/18

PITMAN, United States Magistrate Judge:

This matter is before me on the parties' joint application to approve their settlement (Fourth Revised Proposed Settlement Agreement ("Proposed Settlement Agreement"), annexed as Ex. 1 to Letter of Joshua S. Androphy, Esq., to the undersigned, dated May 2, 2018 (Docket Item ("D.I.") 44) ("Androphy Letter")). All parties have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c).

This is an action brought by two individuals who worked at defendants' restaurant; plaintiff Sotero Neli Flores worked for defendants from approximately August 5, 2013 through approximately January 24, 2016 and plaintiff Cornelio Guerrero worked

for defendants beginning in approximately November 2013 until approximately February 12, 2016 (Complaint dated April 19, 2016 (D.I. 1) ("Compl.") ¶¶ 36, 61). Although they were employed as delivery workers, each maintains that he spent more than 20 percent of his workday performing non-tipped work (Compl. ¶¶ 39, 63. Plaintiffs brought this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq., and the New York Labor Law ("NYLL"), claiming that they were paid less than the minimum wage and did not receive all the overtime premium pay to which they were entitled. Specifically, plaintiffs assert that they were improperly paid at the reduced "tip credit" rate, despite the facts that (1) defendants did not provide notice required by law and more than twenty percent of plaintiffs' time was spent doing non-tipped work (Compl. ¶¶ 39, 49-57, 63, 73-82). Plaintiffs also assert claims based on defendants' alleged failure to maintain certain payroll records, provide certain notices as required by the NYLL and reimburse plaintiffs for the cost of equipment that plaintiffs were required to use during their employment.

Plaintiffs' total alleged damages, exclusive of pre-judgment interest and attorney's fees and costs, are $49,064.45. Of this amount, Flores claims that he is owed $19,466.00, and

Guerrero claims that he is owed $29,598.45.[1] Using these damages figures, Flores's pro rata share of the total damages claimed is approximately 39.7% and Guerrero's is approximately 60.3%.

Defendants deny plaintiffs' claims. Defendants assert that plaintiffs were tipped deliverymen who performed tip work almost exclusively each day. Defendants argue that they lawfully paid plaintiffs at the reduced tip credit rate and that, in any event, in recent years they began plaintiffs at the full minimum wage rate. Defendants maintain that plaintiffs did not spend any of their own money on tools of the trade and that they complied with notice requirements under NYLL at all times.

This is the fourth time that the parties have sought judicial approval of a proposed settlement. I rejected the parties' previous proposed settlement agreements on the grounds that (1) the parties failed to provide sufficient information to enable me to determine whether both the total amount of the settlement and each plaintiff's share of the settlement were fair and reasonable and (2) the proposed agreements contained imper-

---

[1] Flores's damages include $7,790.50 in unpaid wages and overtime pay, $7,790.50 in liquidated damages, $2,500.00 in statutory penalties and $1,385.00 for reimbursement for tools of the trade. Guerrero's damages include of $10,174.23 in unpaid wages and overtime pay, $10,174.23 in liquidated damages, $10,000.00 in statutory penalties and $1,750.00 for reimbursement for tools of the trade.

missible provisions, including general releases that were not truly mutual. On May 2, 2018, the parties submitted the proposed settlement agreement currently before me, claiming to have revised it in accordance with my most recent Opinion and Order in this matter, dated April 2, 2018 (Opinion and Order of the undersigned, dated Apr. 2, 2018 (D.I. 43)). Because the parties reached a settlement after a settlement conference had been scheduled but before it was actually held, my knowledge of the underlying facts and the justification for the settlement is limited to counsel's letters in advance of the settlement conference and the representations in the letter submitted in support of the settlement.

Under the proposed settlement agreement, defendants agree to pay plaintiffs $30,000.00 in full and final satisfaction of plaintiffs' claims. The parties also agree that plaintiffs' counsel will receive $10,600.00 of the settlement fund for attorney's fees and costs. The amount claimed by each plaintiff, exclusive of pre-judgment interest, and the net amount that will be received by each after deduction of legal fees and costs are as follows:

| Plaintiff | Amount Claimed | Net Settlement Amount |
|---|---|---|
| Sotero Neli Flores | $19,466.00 | $8,000.00 |
| Cornelio Guerrero | $29,598.45 | $11,400.00 |
| **Total** | **$49,064.45** | **$19,400.00** |

Court approval of an FLSA settlement is appropriate

> "when [the settlement] [is] reached as a result of contested litigation to resolve <u>bona fide</u> disputes." <u>Johnson v. Brennan</u>, No. 10 Civ. 4712, 2011 WL 4357376. at *12 (S.D.N.Y. Sept. 16, 2011). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement." <u>Id.</u> (citing <u>Lynn's Food Stores, Inc. v. United States</u>, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)).

<u>Agudelo v. E & D LLC</u>, 12 Civ. 960 (HB), 2013 WL 1401887 at *1 (S.D.N.Y. Apr. 4, 2013) (Baer, D.J.) (alterations in original). "Generally, there is a strong presumption in favor of finding a settlement fair, [because] the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." <u>Lliquichuzhca v. Cinema 60, LLC</u>, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (Gorenstein, M.J.) (internal quotation marks omitted). In <u>Wolinsky v. Scholastic Inc.</u>, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012), the Honorable Jesse M. Furman, United States District Judge, identified five factors that are relevant to an assessment of the fairness of an FLSA settlement:

5

> In determining whether [a] proposed [FLSA] settlement is fair and reasonable, a court should consider the totality of circumstances, including but not limited to the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

(internal quotation marks omitted). The settlement here satisfies these criteria.

First, plaintiffs total settlement, after deduction of fees and costs, represents approximately 39.5% of their total alleged damages, exclusive of pre-judgment interest. Defendants dispute that plaintiffs spent a substantial portion of their workday performing non-tipped duties and that they did not provide plaintiffs proper notice of the tip-credit provision. Defendants assert that plaintiffs were paid their full wages. As discussed in more detail below, given the risks these issues present, the settlement amount is reasonable.

Second, the settlement will entirely avoid the expense and aggravation of litigation. As noted above, defendants dispute that plaintiffs performed substantial non-tipped duties and plaintiffs do not have any documentary evidence supporting their contention. Thus, trial preparation would likely require

6

depositions to explore this issue. The settlement avoids the necessity of conducting these depositions.

Third, the settlement will enable plaintiffs to avoid the risk of litigation. To prevail on their tip-credit and overtime claims, plaintiffs will have to establish that they spent more than 20 percent of their work day performing tasks for which they did not receive tips and that they were entitled to overtime premium pay. Given the lack of documentary evidence supporting plaintiffs' positions and the fact that plaintiffs bear the burden of proof, it is uncertain whether, or how much, plaintiffs would recover at trial. See Bodon v. Domino's Pizza, LLC, NO. 09-CV-2941 (SLT) 2015 WL 588656 at *6 (E.D.N.Y. Jan. 16, 2015) (Report & Recommendation) ("[T]he question [in assessing the fairness of a class action settlement] is not whether the settlement represents the highest recovery possible . . . but whether it represents a reasonable one in light of the uncertainties the class faces . . . ." (internal quotation marks omitted)), adopted sub nom. by, Bodon v. Domino's Pizza, Inc., 2015 WL 588680 (E.D.N.Y. Feb. 11, 2015); Massiah v. MetroPlus Health Plan, Inc., No. 11-cv-05669 (BMC), 2012 WL 5874655 at *5 (E.D.N.Y. Nov. 20, 2012) ("[W]hen a settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount

years down the road, settlement is reasonable . . . ." (internal quotation marks omitted)).

Fourth, counsel represents that the settlement is the product of arm's-length bargaining between experienced counsel and that counsel advocated zealously on behalf of their respective clients during negotiations. There is no evidence to the contrary.

Fifth there are no factors here that suggest the existence of fraud. Counsel represents that the settlement was agreed upon after extensive negotiations between the parties' attorneys.

The settlement fund will be distributed to plaintiffs on a pro rata basis approximately identical to the proportion of each plaintiff's individual claim to the total alleged damages. Flores's claimed pro rata share of the total damages alleged, exclusive of pre-judgment interest, is approximately 39.40% and Guerrero's is 60.33%. Under the settlement agreement, Flores will receive approximately 41.24% of the settlement and Guerrero will receive 58.76%. Thus, plaintiffs will receive approximately their claimed proportional share of potential damages. .

The proposed settlement agreement also contains a release (Proposed Agreement ¶¶ 3(2), 5(a)). Specifically, the

plaintiffs release the "Releasees"[2] from "any and all claims, . . . suits or causes [of action] known or unknown, suspected or unsuspected, arising under the [FLSA]; arising under the [NYLL]; any other claims for alleged unpaid wages, remuneration, or compensation . . . arising under federal, state or local laws; and/or claims for retaliation pursuant to the FLSA and/or the NYLL" (Proposed Settlement Agreement ¶ 5(a)). Such a release, although unlimited in duration, is permissible because it is limited to wage-and-hour claims only. See Seck v. Dipna RX, Inc., 16 Civ. 7262 (PKC), 2017 WL 1906887 at *2 (S.D.N.Y. May 8, 2017) (Castel, D.J.) (noting that judges in this district have approved FLSA settlements with language that released only plaintiffs' claims "(1) relating to wages and hours, including those under FLSA, [NYLL] . . . or common law; (2) relating to retaliation for protected activity concerning wages or hours [and] ([3]) asserted in the Action."); Yunda v. SAFI-G, Inc., 15 Civ. 8861 (HBP), 2017 WL 1608898 at *3 (S.D.N.Y. Apr. 28, 2017)

---

[2]Under the terms of the proposed settlement agreement, "Releasees" are "defendants and each and every one of their divisions, affiliates, subsidiaries, parents, corporations und3er common ownership or control, related business entities, predecessors, successors, management companies, assigns, insurers, officers, directors, trustees, employees, agents, shareholders, members, owners, representatives, attorneys, and/or fiduciaries, past, present or future" (Proposed Settlement Agreement ¶ 5(a)).

(Pitman, M.J.) (collecting cases); Santos v. Yellowstone Props., Inc., 15 Civ. 3986 (PAE), 2016 WL 2757427 at *1, *3 (S.D.N.Y. May 10, 2016) (Engelmayer, D.J.) (approving release that included both known and unknown claims and was limited to wage and hour claims).

The proposed settlement agreement also contains a non-publication clause (Proposed Settlement Agreement ¶ 10). That provision states, in pertinent part:

> Plaintiffs, Plaintiffs' Counsel, Defendants, and Defendants' Counsel agree that they will not issue, send or post, or cause to be issued, sent or posted, any press release, posting, e-mail or other verbal or written communication to any electronic, print or digital media, blogs, or social networking sites . . . (collectively, the "Media") regarding the Litigation, the Parties' settlement discussions, the existence and/or terms of this Agreement, and/or the facts and events leading up to the same

(Proposed Settlement Agreement ¶ 10). If asked, the parties and counsel "will simply state that the Litigation has been resolved to the satisfaction of the parties" (Proposed Settlement Agreement ¶ 10). The clause also provides that notwithstanding this proscription, the parties and counsel shall not be prevented "from discussing their experiences in this case with third-parties other than the [M]edia" (Proposed Settlement Agreement ¶ 10).

10

Judges in this district have found that similar provisions are permissible. See Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, 13 Civ. 5008 (RJS), 2016 WL 922223 at *2 (S.D.N.Y. Feb. 3, 2016) (Sullivan, D.J.); accord Flores v. Studio Castelano Architect, P.C., 15 Civ. 9158 (TPG), 2017 WL 4417697 at *3 (S.D.N.Y. Oct. 2, 2017) (Griesa, D.J.); Ramirez v. Greenside Corp., 16 Civ. 729 (HBP), 2017 WL 880878 at *2 (S.D.N.Y. Mar. 3, 2017) (Pitman, M.J.). In Lola v. Skadden, Arps, Slate, Meagher & Flom LLP, supra, 2016 WL 922223 at *2, Judge Sullivan found permissible a non-disparagement clause that did not "unduly restrict plaintiff's ability to discuss the settlement" because the settlement was available on the public docket and the plaintiff was "free to decline commenting on the case in response to any future inquiries by the press or other-wise." See Flores v. Studia Castelano Architect, P.C., supra, 2017 WL 4417697 at *3 (finding non-disclosure provision permissible where it had "none of the hallmarks of the overly-broad provisions rejected by courts in this Circuit, such as an all-encompassing non-disparagement clause," citing Ramirez v. Greenside Corp., supra, 2017 WL 880878 at *2 (S.D.N.Y. Mar. 3, 2017) (Pitman, M.J.)). Judge Sullivan also found it significant that the non-disclosure clause was the result "of fair bargaining between well-represented

parties and embodies reasonable compromise." Lola v. Skadden, Arps, Meagher, Slate & Flom LLP, supra, 2016 WL 922223 at *2.

Similar considerations here also lead to the conclusion that the non-disclosure clause in the proposed settlement agreement does not conflict with the FLSA's remedial purposes. The settlement agreement will be available on the public docket to anyone with an interest in reading it. Plaintiffs are free to decline commenting on the case if members of the press should inquire (Proposed Settlement Agreement ¶ 10). In addition, the clause specifically permits plaintiffs to make= truthful statements about their experiences litigating their claims. See Flores v. Studio Castelano Architect, P.C., supra, 2017 WL 4417697 at *3 (finding that one of the "hallmarks" of an impermissible non-disclosure provision is an "all-encompassing non-disparagement clause").

Finally, the proposed settlement agreement allocates $10,600.00 of the total settlement to plaintiffs' counsel; this amount includes $10,200.00 for attorney's fees, or approximately one-third of the settlement amount, plus $400.00 in costs. Attorney's fees of one-third in FLSA cases are routinely approved in this Circuit. Santos v. EL Tepeyac Butcher Shop Inc., 15 Civ. 814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams, D.J.) ("[C]ourts in this District have declined to award more

than one third of the net settlement amount as attorney's fees except in extraordinary circumstances."), citing Zhang v. Lin Kumo Japanese Rest. Inc., 13 Civ. 6667 (PAE), 2015 WL 5122530 at *4 (S.D.N.Y. Aug. 31, 2015) (Engelmayer, D.J.) and Thornhill v. CVS Pharm., Inc., 13 Civ. 507 (JMF), 2014 WL 1100135 at *3 (S.D.N.Y. Mar. 20, 2014) (Furman, D.J.); Rangel v. 639 Grand St. Meat & Produce Corp., 13 CV 3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sep. 19, 2013) (approving attorney's fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiff's retainer agreement and noting that such an agreement "is routinely approved in this Circuit"); Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012) (Stein, D.J.) ("[A] fee that is one-third of the fund is typical" in FLSA cases); accord Calle v. Elite Specialty Coatings Plus, Inc., 13-CV-6126 (NGG)(VMS), 2014 WL 6621081 at *3 (E.D.N.Y. Nov. 21, 2014); Palacio v. E*TRADE Fin. Corp., 10 Civ. 4030 (LAP)(DCF), 2012 WL 2384419 at *6-*7 (S.D.N.Y. June 22, 2012) (Freman, M.J.).

Accordingly, for all the foregoing reasons, I approve the settlement in this matter. In light of the settlement, the

13

action is dismissed with prejudice and without costs. The Clerk is respectfully requested to mark this matter closed.

Dated:  New York, New York
        May 23, 2018

SO ORDERED

_____
HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

All Counsel